Filed by ___ D.C.

Apr 1, 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 15-20222-CR-WILLIAMS/SIMONTON

18 U.S.C. § 1349
18 U.S.C. § 2
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

ADRIAN FERNANDEZ,

        Defendant.
_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

#### The Medicare Program

1.     The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a "home health agency" (HHA), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound. Payments for home health care medical services were typically made directly to a Medicare-certified HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries.

4. CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators (Palmetto). As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data. CMS first contracted with TriCenturion, a Program Safeguard Contractor. Subsequently, on December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor. Both TriCenturion and SafeGuard Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

## Part A Coverage and Regulations

### Reimbursements

5. The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits. A patient qualified for home health benefits only if the patient:

2

(a) was confined to the home, also referred to as homebound;

(b) was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care (POC); and

(c) the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the POC.

## Record Keeping Requirements

6. Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

7. Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare was a (i) POC that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehab potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification

statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

8. Additionally, Medicare Part A regulations required HHAs to maintain medical records of every visit made by a nurse, therapist, or home health aide to a patient. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health aide was required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "skilled nursing progress notes" and "home health aide notes/observations."

9. Medicare regulations allowed Medicare certified HHAs to subcontract home health care services to nursing companies, registries, or groups (nursing groups), which would bill the certified HHA. The Medicare certified HHA would, in turn, bill Medicare for all services rendered to the patient. The HHA's professional supervision over subcontracted-for services required the same quality controls and supervision as of its own salaried employees.

### The Defendant

10. Defendant **ADRIAN FERNANDEZ**, a resident of Miami-Dade County, was a licensed physical therapy assistant who purportedly provided home health care services to Medicare beneficiaries. As a physical therapy assistant in the home health field, it was his duty to provide physical therapy services to Medicare beneficiaries, and maintain proper documentation of all the treatments he provided.

4

## CONSPIRACY TO COMMIT HEALTH CARE FRAUD
### (18 U.S.C. § 1349)

From in or around December, 2010, and continuing through at least in or around July, 2013, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ADRIAN FERNANDEZ,**

did knowingly and willfully combine, conspire, confederate, and agree with others, known and unknown to the United States Attorney, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

11.   It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things, (a) submitting and causing the submission of false and fraudulent claims to Medicare; and (b) concealing of the submission of false and fraudulent claims to Medicare.

### Manner and Means

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

12.   At the direction of his co-conspirators, **ADRIAN FERNANDEZ** signed patient visitation forms falsely and fraudulently certifying that he had provided physical therapy services

5

to Medicare beneficiaries when in fact, he had not provided physical therapy services to Medicare beneficiaries.

13. **ADRIAN FERNANDEZ** and his co-conspirators submitted and caused the submission of false and fraudulent claims for home health services that were not provided to Medicare beneficiaries.

14. As a result of these false and fraudulent claims, multiple Miami-Dade County home health agencies received payments from Medicare.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE
### (18 U.S.C. § 982)

1. The allegations contained in this Information are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which the defendant, **ADRIAN FERNANDEZ**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1349, the defendant shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the violation, pursuant to Title 18, United States Code, Section 982(a)(7).

3. The property which is subject to forfeiture includes, but is not limited to, a forfeiture money judgment in the amount of approximately $330,826 (US), which is a sum of money equal in value to the gross proceeds traceable to the commission of the violation alleged in this Information.

All pursuant to Title 18, United States Code, Section 982(a)(7) and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
KEVIN J. LARSEN
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| vs. | |
| ADRIAN FERNANDEZ, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| **Defendant.** _____ / | Superseding Case Information: |

**Court Division**: (Select One)

| _X_ Miami | ___ Key West | New Defendant(s) | Yes ___ No ___ |
|---|---|---|---|
| ___ FTL | ___ WPB   ___ FTP | Number of New Defendants | ___ |
| | | Total number of counts | ___ |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No)     __NO__
   List language and/or dialect

4. This case will take 0 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                             (Check only one)

   | I   | 0 to 5 days      | _X_ | Petty    | ___ |
   |-----|------------------|-----|----------|-----|
   | II  | 6 to 10 days     | ___ | Minor    | ___ |
   | II  | 11 to 20 days    | ___ | Misdem.  | ___ |
   | IV  | 21 to 60 days    | ___ | Felony   | _X_ |
   | V:  | 61 days and over | ___ |          |     |

6. Has this case been previously filed in this District Court?   (Yes or No)   __No__
   If yes:
   Judge: _____   Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   __No__
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

   Is this a potential death penalty case? (Yes or No)   __X__

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?          ___ Yes   _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?          ___ Yes   _X_ No

_____
KEVIN J. LARSEN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. A5501050

*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: ADRIAN FERNANDEZ

**Case No**: _____

Count #: 1

Conspiracy to Commit Health Care Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty:** Ten (10) years' imprisonment

Counts #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

\* Refers only to possible fine, does not include possible restitution, special assessments, parole terms, or forfeitures that may be applicable.